UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| STACY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-349-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Stacy Thompson appeals the Social Security Administration's denial of her claim for disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). [Record No. 6] She contends that the Administrative Law Judge ("ALJ") assigned to her case violated agency regulations in failing to adequately evaluate and sufficiently consider Meghan Shapiro, M.A.'s opinion concerning mental restrictions which resulted in a residual functional capacity ("RFC") that is not supported by substantial evidence. *Id.* However, after reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence.

**I.**

Thompson filed for DIB and SSI in December 2022, alleging a period of disability beginning in December 2021. [Record No. 5-1 at 23] She later amended her alleged onset of disability to March 2022. *Id.* ALJ Jeffrey Eastham issued an unfavorable decision in October 2024, following an administrative hearing. His decision became final when the Appeals Council denied review in July 2025. *Id.* at 7, 34.

- 1 -

The ALJ concluded that Thompson had the following severe medically determinable impairments: obesity, lumbar degenerative disc disease, bilateral knee degenerative joint disease and osteoarthritis, monocular exotropia, presbyopia, and hyperopia. [Record No. 5-1 at 27] However, he found that Thompson did not have a medically determinable mental impairment. *Id.* at 28. The ALJ assigned Thompson a RFC for light work except that she could not:

> frequently reach, handle, finger, and feel with bilateral upper extremities except no overhead reaching, overhead handling, overhead fingering, or overhead feeling; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; no work at unprotected heights or around dangerous machinery; frequently balance as defined by the Selected Characteristics of Occupations; frequently stoop and crouch; never kneel or crawl; occasional exposure to extreme cold or extreme heat; has frequent near and far visual acuity; and a sit/stand option, alternating positions every 40 minutes at the workstation.

*Id.* at 29–30.

The ALJ found Thompson was unable to perform any past relevant work and relied on vocational testimony to determine there are jobs that exist in significant numbers in the national economy that she can perform (*i.e.*, parking lot attendant, assembler, and storage facility rental clerk). [Record No. 5-1 at 32, 34] As a result, he found her not disabled during the relevant period. *Id.* at 34.

## II.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability

determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc).

In determining whether a claimant is "disabled" and entitled to supplemental income, she must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment, but the ALJ cannot make a determination regarding the disability based on medical evaluations and current work activity, the ALJ will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant's impairments prevent her from doing past work, the ALJ will consider her RFC, age, education, and past work experience to determine whether she can perform other work under the fifth step of the analysis. If she cannot perform other work, the ALJ will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Further, a reviewing court does not conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.[1]

### III.

Thompson claims that the ALJ erred in evaluating and explaining the persuasiveness of psychologist Shapiro's opinion regarding her mental restrictions.[2] [Record No. 6] She claims that the ALJ impermissibly relied on insufficient objective medical findings and treatment and inadequately explained how the supportability and consistency factors led him to reject the mental restrictions. *Id.* at 9. Thompson insists that Shapiro's restrictions were "well-supported by clinical signs and findings" and "corroborated by the Third Party Functional Report completed by [her] daughter, Amy Thompson." [Record Nos. 6 at 8 and 12 at 1] And because mental restrictions were left out of her RFC, that caused the agency to fail in meeting its burden to prove other jobs existed that she could perform. [Record No. 6 at 9]

---

[1]    Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

[2]    Shapiro indicated the following restrictions: moderately impaired ability to understand and remember two-step instructions, moderately impaired ability to maintain attention and focus on tasks, and mildly to moderately impaired ability to navigate the stressors of a day-to-day work setting. [Record No. 5-1 at 987]

Conversely, the Commissioner contends that the ALJ's conclusion that Thompson had no medically determinable mental impairment is supported by substantial evidence. [Record No. 11 at 3] He notes that Shapiro's 2020 opinion related to Thompson's mental condition more than a year before her onset of alleged disability and that it pertained to a condition (adjustment disorder) which is usually temporary. *Id.* He further insists that the ALJ properly considered the supportability and consistency factors by acknowledging that Shapiro's opinion may have been supported when it was offered but that it was inconsistent with the evidence in the record and Thompson's own testimony. *Id.* at 4. In any event, the Commissioner claims that the ALJ's assessment of the more recent psychological consultants' assessments and findings alone constitutes substantial evidence in finding no medically determinable mental impairment. *Id.* at 6–7 (citing Record No. 5-1 at 113–15, Tonya Sinkhorn, Pys.D.'s November 2023 report indicating no mental impairment[3] and at 122–25, Mary K. Thompson, Ph.D.'s March 2024 report affirming).

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must set out a "'minimum level of articulation'" concerning how he or she analyzed the "supportability and consistency factors." *Childers v. Kijakazi*, No. CV 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky.

---

[3] "Claimant does not allege mental impairment but alleges limitations in memory, concentration, and problems with completing tasks. There is no dx of any mental impairments in file. . . . She reports her pain is very distracting. She is able to go shopping, being around other people. Does not need reminders to go places. Can follow instructions well. Get along with authority figures."

July 12, 2022) (quoting *Miles v. Comm'r of Soc. Sec.*, 2021 WL 4905438, at *3 (S.D. Ohio Oct. 21, 2021)).

Under the supportability determination, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c)(3). And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c)(3). Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

**Objective Medical Evidence:** Thompson contests the ALJ's reliance on a lack of objective medical evidence in finding that she had no medically determinable mental health impairment during the period at issue. [Record Nos. 5-1 at 28 and 6 at 6] She insists that a "psychiatric impairment is not 'as readily amenable to substantiation by objective laboratory testing as a medical impairment'" and so trained practitioners' observations and reports "'should not be rejected simply because of the relative imprecision of the psychiatric

- 6 -

methodology or the absence of substantial documentation.'"  [Record No. 6 at 7 (quoting

*Marci M. v. Comm'r of Soc. Sec.*, No. 2:22-CV-12204, 2024 WL 1478185, at *12–13 (E.D.

Mich. Jan. 29, 2024), *report and recommendation adopted sub nom. Marci A. M. v. Comm'r

of Soc. Sec.*, No. 22-CV-12204, 2024 WL 1138032, at *2 (E.D. Mich. Mar. 15, 2024) (citing

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989))).]

But the Commissioner insists that objective medical evidence is required despite

whether the impairment is mental or physical.  [Record No. 11 at 5, 7–8 (citing 20 C.F.R. §§

404.1521, 416.921 (indicating that medically determinable impairments "must be established

by objective medical evidence from an acceptable medical source" and that a claimant's

statement of symptoms or diagnosis is insufficient); and Social Security Ruling 16-3p, 2017

WL 5180304, at *4).]  He further argues that the ALJ properly relied on Thompson's medical

records that commented on her unremarkable mental status when determining that she had no

medically determinable mental impairment.  *Id.* at 8 (citing *Mason v. Comm'r of Soc. Sec.*, No.

17-2407, 2018 WL 6133750, at *1 (6th Cir. Apr. 30, 2018)).

The Commissioner is correct on this point.  The regulations by their plain text require

objective medical evidence from an acceptable medical source notwithstanding whether the

impairment is physical or mental.  *See* 20 C.F.R. §§ 404.1521, 416.921. However, Thompson's

lack of treatment created a dearth of objective medical evidence and records upon which the

ALJ could conclude she had a medically determinable mental health impairment.  [*See* Record

No. 5-1 at 6.] Her self-reported symptoms and her daughter's Third-Party Functional Report

could not make up for that lack of evidence.  20 C.F.R. §§ 404.1521, 416.921 ("We will not

use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence

of an impairment(s).").  Further, the ALJ properly relied on Thompson's medical records that

observed normal mental status in determining that she had no medically determinable mental impairment.  And there is no indication that her physical or mental condition was an impediment to her obtaining mental health treatment.

**Supportability:** Thompson also argues that the ALJ failed to address the supportability of Shapiro's opinion.  [Record No. 6 at 5–6] However, the ALJ explained that while Shapiro's assessment may have been supported at the time it was made, he did not find it persuasive when considered among the current evidence of record.  [*See* Record No. 5-1 at 29.] Shapiro's report specified that Thompson's "short-term memory, and ability for abstraction seemed limited *at the time of the current appointment*."  [Record No. 5-1 at 987 (emphasis added).] She then rendered a diagnosis of "Adjustment Disorder with mixed anxiety and depressed mood."  *Id.*  As the defendant argues, an adjustment disorder would ordinarily be expected to last for a period of time, not indefinitely.  *Id.*  With that reality, coupled with Shapiro's assessment being done in 2020 (over a year before Thompson's amended onset of disability), the ALJ reasonably looked to more recent evidence in the record.

The ALJ considered Sinkhorn's 2023 assessment which noted no diagnoses of mental health impairments and Mary Thompson's 2024 assessment that affirmed Sinkhorn's determinations and provided that the claimant made "[n]o mental allegations or report of mental worsening on appeals form or in updated [activities of daily living]."  [Record No. 5-1 at 109 (Sinkhorn's report), and 124 (Thompson's report)] He found those assessments to be persuasive because they were supported by a review of Thompson's medical file which included that no medical provider recommended mental health treatment and that she had not sought treatment for mental health concerns on her own.  [Record No. 5-1 at 28, 986 (Shapiro noting Thompson "has talked to her doctor about her health related stress, however her doctor

has not recommended medication or therapy at this time").] In short, the ALJ reasonably concluded that Shapiro's opined mental limitations for Thompson were not supported during her period of alleged disability.

**Consistency:** Next, Thompson challenges the ALJ's reliance on her lack of mental health treatment in finding that she did not have a medically determinable mental impairment. [Record No. 12 at 2–3] She contends that relying on a lack of treatment alone is error because the failure to seek mental health treatment can be a symptom of the disorder itself. *Id.* at 2. Thompson further claims that the ALJ failed to consider how Shapiro's assessment was consistent with her daughter's report on the severity of her mental impairment. *Id.* at 1.

But as the Commissioner argues, the ALJ did not rely solely on the lack of mental health treatment records during the period of alleged disability. [Record No. 11 at 4–6] Instead, he sought testimony from Thompson concerning current treatment and compared Shapiro's assessment alongside Sinkhorn's and Mary Thompson's reports and reports of normal mental findings by other providers. [Record No. 5-1 at 28] The ALJ also considered that Shapiro's assessment was performed a year before the alleged disability onset, whereas the other assessments were within the disability period. *Id.* at 30–31.

While it might have been error to disregard Shapiro's opinion entirely based either on its timing or Thompson's lack of current mental health treatment, that did not occur here. Instead, the ALJ reasonably concluded that Thompson lacked a medically determinable mental impairment after weighing the consistency of Shapiro's limitations alongside other provider's more recent observations and Thompson's hearing testimony concerning her lack of treatment. [Record No. 5-1 at 28–29, 49 (testifying to no mental health medication and no counseling services).] And although he did not memorialize his assessment of the consistency of Shapiro's

limitations against Thompson's daughter's observations, he did note "in reaching the above conclusions, the undersigned has taken into consideration the information . . . in the third-party function report." [Record No 5-1 at 32]

**Substantial Evidence:** Either way, the ALJ's conclusion that the state psychological consultants' opinions (i.e., that Thompson had no medically determinable mental impairment) were persuasive provides substantial evidence upon which he based his conclusion. Sinkhorn's assessment concluded that although Thompson's purported "limitations in memory, concentration, completing tasks, and following instructions, can be attributed to" her medically determinable impairments," when her "statements are weighted against the overall objective evidence in the folder, the alleged limitations would not occur with the level of severity reported." [Record No. 5-1 at 109] Mary Thompson affirmed Sinkhorn's assessment. *Id.* at 124. The ALJ found those opinions both supported and consistent and therefore persuasive. *See id.* at 28–29.

## IV.

As noted above, even if the undersigned might resolve the dispute differently, "the Commissioner's decision will stand if supported by substantial evidence and the ALJ did not commit legal errors. And here, the ALJ's opinion is supported by ample evidence and consideration of all material facts. Further, ALJ Eastham did not commit legal errors requiring reversal or remand for further administrative proceedings. Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff Stacy Thompson's motion for judgment [Record No. 6] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for judgment [Record No. 11] is **GRANTED**.

3.	This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  June 1, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky